**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

EDWARD LEV,

                               Plaintiff,             9:19-cv-01387 (BKS/CFH)

v.

MATTHEW THOMS, in his individual and official capacities as Superintendent of Five Points Correctional Facility; ANTHONY J. ANNUCCI, in his individual and official capacities as Acting Commissioner of the New York Department of Corrections and Community Supervision; JOHN DOE 1, in his individual and official capacities as Deputy Commissioner of the New York Department of Corrections and Community Supervision; and JOHN DOE 2, in his individual and official capacities as Unit Supervisor for the Five Points Correctional Facility,

                               Defendants.

_____

**Appearances:**

*For Plaintiff:*
Mario B. Williams
Angelik Edmonds
NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, GA 30303

*For Defendants Matthew Thoms and Anthony J. Annucci:*
Letitia A. James
Attorney General of the State of New York
Helena O. Pederson
Shannan Collier Krasnokutski
Assistant Attorneys General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

Plaintiff Edward Lev, who is in the custody of the New York Department of Corrections and Community Supervision ("DOCCS") and allegedly suffers from severe mental illness, brings this action under 42 U.S.C. § 1983. (*See generally* Dkt. No. 9). The Amended Complaint alleges that Plaintiff's confinement in the Residential Mental Health Unit ("RMHU") at Five Points Correctional Facility ("Five Points") constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. (*Id.* at 2, 20–21). Plaintiff seeks declaratory and injunctive relief against four DOCCS officers: Defendant Matthew Thoms, Five Points Superintendent; Defendant Anthony J. Annucci, Acting Commissioner of DOCCS; an unnamed officer whose title is Deputy Commissioner of DOCCS; and another unnamed officer whose title is Unit Supervisor for Five Points. (*Id.* at 21–22). Presently before the Court is Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that, *inter alia*, Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[1] (Dkt. No. 25). Defendants also move under 28 U.S.C. § 1404(a) to transfer this case to the Western District of New York. (*Id.*).[2] Plaintiff opposes Defendants' motions. (Dkt. No. 26). The Court held oral argument on the motions on December 19, 2019. For the reasons that follow, Defendants' motion to dismiss is granted and Defendants' motion to transfer is denied as moot.

---

[1] Defendants also move to dismiss on the grounds that the claim for injunctive relief fails to meet the standards of *Ex parte Young*; and "Defendants lack the authority to effectuate the relief sought." (Dkt. No. 25-2). Because, as discussed herein, Plaintiff has failed to exhaust his administrative remedies, the Amended Complaint must be dismissed and the Court does not reach these arguments.

[2] Also pending is Plaintiff's motion for a temporary restraining order and preliminary injunction. (Dkt. Nos. 4, 10). Because the Court grants Defendants' motion to dismiss, Plaintiff's motion for injunctive relief is denied as moot.

## II. BACKGROUND[3]

Plaintiff, who is 18, "has a long history of mental illness and was first diagnosed with multiple mental health disorders beginning approximately at age six." (Dkt. No. 9, at 3). On May 31, 2019, in a related case, *Lev v. Lewin*, 9:19-cv-00061, the Court granted Plaintiff's motion for preliminary injunctive relief and directed the release of Plaintiff, who was then a minor, from disciplinary segregation. *Paykina ex rel. E.L. v. Lewin*, 387 F. Supp. 3d 225 (N.D.N.Y. 2019). Plaintiff turned 18 shortly after the issuance of the preliminary injunction and, on June 25, 2019, was transferred to Five Points, an adult maximum-security prison. (Dkt. No. 9, at 11). "Upon arrival at Five Points," Plaintiff "was placed on the wait list for the Immediate Care Program ('ICP'), a restrictive housing unit, 'at the direction of Albany.'" (*Id.*). On June 29, 2019, Plaintiff was transferred to the ICP "within Five Points, under the direction and control of Defendants." (*Id.* at 12). In the ICP, Plaintiff "was subjected to 17.5 hours a day of solitary confinement" and received "2 hours of programming in the morning and 2 hours of programming in the evening," and "2.5 hours of recreation time, either inside with the 10 other inmates in his section of the ICP or outside with all 21 other inmates in the ICP." (*Id.*).

Plaintiff, in "attempting to manage his behaviors in light of the deleterious impacts of isolation in the ICP, began to act out and received a weapons violation for allegedly having a lock in a sock." (*Id.*). On July 18, 2019, "[a]s a result of [Plaintiff's] weapons violation," he "was assigned to Keep Lock, the most restrictive form of solitary confinement, which requires 23 hours of solitary confinement and 1 hour out-of-cell time." (*Id.*). Plaintiff "served 29 days in Keep Lock," where, for the first two weeks, he was "unable to communicate with his support

---
[3] The facts are taken from the Amended Complaint. (Dkt. No. 9). The Court will assume the truth of, and draw reasonable inferences from, those well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

3

system as Defendants revoked his phone privileges." (*Id.* at 13). After his release from Keep Lock, Plaintiff "returned to the ICP population," but "[s]hortly thereafter," he "misbehaved again, spilling coffee on another inmate." (*Id.*). As a result of this "minor infraction," Plaintiff "was forced to return to Keep Lock for 15 days from August 25, 2019 to September 9, 2019." (*Id.*). Plaintiff returned to ICP on September 9, 2019. (*Id.*).

On September 29, 2019, after receiving a violation "when he attempted to defend himself in a fight with another inmate," "the Warden of Five Points assigned" Plaintiff to the RMHU for 90 days. (*Id.* at 13–14). In the RMHU, Plaintiff "is confined to a parking lot sized cell for 19 hours per day," "receives four hours of programming, but he is shackled to a RESTART chair,"[4] and "is allowed to exit his cell for one hour, but he is confined to an individual cage." (*Id.* at 14). Plaintiff is "allowed 1 family visit per week" but has no phone privileges. (*Id.* at 14–15). Plaintiff receives "daily visits from whom [sic] he believes is a psychologist"; the visits are "conducted through his cell door" and "last less than 5 minutes." (*Id.* at 15).

In the RMHU, Plaintiff's "isolation from people and inadequate mental health treatment have exacerbated [Plaintiff's] concurrent mental health disorders." (*Id.* at 16). "For several weeks, [Plaintiff] refused to take his medications" though he has since resumed taking them. (*Id.*). In the RMHU, Plaintiff "is feeling suicidal every day" and has been placed on suicide watch twice in the last two weeks. (*Id.* at 16–17). Plaintiff has cut himself with a staple "over 100 times" "in an attempt to stay sane." (*Id.* at 17–18). "[S]olitary confinement exacerbates [Plaintiff's] mental illnesses because it 'makes [him] more impulsive, dis-attached, depressed, more anxious, causes frequent headaches, and makes [him] more suicidal." (*Id.* at 18). Plaintiff

---

[4] "RESTART chairs are heavy duty chairs that are bolted to the ground. Shackles are attached to the reinforced frame of the chair, prohibiting movement." (Dkt. No. 9, at 14 n.4).

"has expressed a desire to get treatment and to be in a residential, secured, mental health facility." (*Id.*).

Defendants are aware of Plaintiff's history of mental illness through review of his "inmate personnel file" and "their psychologist's mental health assessment." (*Id.* at 19).

### III. MOTION TO TRANSFER VENUE

Defendants move under 28 U.S.C. § 1404(a) to transfer this action to the Western District of New York, where Five Points is located. (Dkt. No. 25). Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." It is not disputed that Defendant Annucci is in Albany, (Dkt. No. 25-2, at 30), thus venue in the Northern District of New York is proper under § 1391. In light of the Court's conclusion that this case must be dismissed because Plaintiff failed to exhaust his administrative remedies, the Court does not reach the issue of whether transfer is warranted under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice." Accordingly, Defendants' motion to transfer is denied as moot.

### IV. MOTION TO DISMISS

Defendants seek dismissal of the Amended Complaint on the ground that Plaintiff failed to exhaust administrative remedies under the PLRA prior to bringing this action. (Dkt. No. 25-2). Plaintiff opposes the motion. (Dkt. No. 26).

#### A. Standard of Review

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere

5

labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

### B. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules.[5] *Jones v. Bock*, 549 U.S. 199, 218–19 (2007). The PLRA contains one "textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id*. The Second Circuit has

---

[5] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The grievance procedure in New York is a three-tiered process. The prisoner must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the superintendent of the facility. *Id.* § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

explained that "an administrative remedy may be unavailable when": (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859–60).

Because "[f]ailure to exhaust administrative remedies is an affirmative defense," it is "not a pleading requirement." *Id.* at 122. Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* (quoting *Jones*, 549 U.S. at 216). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.*

### 1. Grievability of Conditions of Confinement Claims

Defendants argue that Plaintiff failed to exhaust his administrative remedies for his Eighth Amendment conditions of confinement claim by not filing a grievance. (Dkt. No. 25-2, at 26). Plaintiff asserts that because he was placed in the RMHU "as a result of a disciplinary hearing," and "an individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable," his complaints about the conditions of his confinement "were not the proper subjects for grievance under DOCCS grievance procedure," and administrative remedies were therefore unavailable. (Dkt. No. 9, at 5 (citing 7 N.Y.C.R.R. § 701.3(e)(2))). Defendants respond that because Plaintiff's claims concern "conditions of confinement," and not the disciplinary disposition itself, they "must be exhausted through DOCCS grievance procedures." (Dkt. No. 25-2, at 26).

7

While Plaintiff is correct that a disciplinary disposition is not subject to the *grievance* process, *see* 7 N.Y.C.R.R. § 701.3(e)(2) ("[A]n individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable."), it is subject to an administrative appeals process that must be exhausted prior to filing suit challenging a disciplinary disposition. *See Marhone v. Cassel*, No. 16-cv-4733, 2018 WL 4189518, at *5, 2018 U.S. Dist. LEXIS 149320, at *11 (S.D.N.Y. Aug. 31, 2018) (explaining that although "[a]dministrative or disciplinary decisions are non-grievable" "inmates exhaust these decisions through administrative appeals" (citing *Davis v. Barrett*, 576 F.3d 129, 131–32 (2d Cir. 2009))); 7 N.Y.C.R.R. § 254.8; *see also* 42 U.S.C. § 1997e(a) (requiring exhaustion of "such administrative remedies as are available"). But this is immaterial because Plaintiff challenges the conditions of his confinement—not the disciplinary disposition. To exhaust his administrative remedies for his conditions of confinement claim, Plaintiff was required to utilize the grievance process—even where, as here, they stemmed from his disciplinary placement in the RMHU. *See Davis*, 576 F.3d at 132 ("New York courts have made clear that 'while the grievance procedure cannot be used to challenge the decision in a particular disciplinary proceeding which results in a sanction, it may be used to challenge the *manner* in which the sanction is imposed.'" (quoting *Johnson v. Ricks*, 278 A.D.2d 559, 559 (3d Dep't 2000)); *Ortiz v. McBride*, 380 F.3d 649, 653–54 (2d Cir. 2004) (finding that the plaintiff "exhausted his available administrative remedies with respect to his due process claim" by appealing the disciplinary hearing, but that he had not exhausted his "available administrative remedies with respect to his Eighth Amendment claim" through "DOCS grievance procedures"); *Marhone*, 2018 WL 4189518, at *6, 2018 U.S. Dist. LEXIS 149320, at *14 ("Plaintiff must follow the grievance process for his prison condition claims and the administrative appeal procedure for his Fourteenth Amendment Due Process Clause claims."). It

is clear from the face of the Amended Complaint, and the parties agree, that Plaintiff did not grieve the conditions of his confinement.[6]

### 2. Vagueness of Grievance Procedure

Plaintiff asserts that even if his claim was the proper subject of a grievance, the grievance procedure contained in Inmate Grievance Procedures 4040, which "span over 4 pages of single-spaced text and include 48 sub-parts of information," are "essentially unknowable to an ordinary inmate" and thus unavailable. (Dkt. No. 26, at 16–19). In support of this argument, Plaintiff cites DOCCS statistics regarding the education and reading levels of the inmate population in New York. (Dkt. No. 26, at 19). These arguments, which are not tied to the issues in this case, or to Plaintiff, are conclusory and unavailing.[7]

Nor is this a situation like that of the plaintiff in *Williams*, where the Second Circuit found the regulations prohibitively opaque and confusing and thus unavailable. 829 F.3d at 126. There, the plaintiff, who was in a special housing unit, alleged that he gave his grievance to a correction officer, who never filed it. *Id.* at 122, 124. The Second Circuit found that while the plaintiff "technically" could have appealed his grievance, because "the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies" and "only contemplate appeals of grievances that were actually filed," it was "practically impossible" for the plaintiff "to ascertain whether and how to pursue his grievance." *Id.* at 124. The Second Circuit therefore concluded that because "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it," the

---

[6] Plaintiff's counsel stated at oral argument that this is a legal argument and not one concerning a factual mistake.

[7] The Court likewise rejects Plaintiff's assertion that "Defendants unconstitutionally vague grievance procedures infringe upon [Plaintiff's] First Amendment 'access-to-courts' because exhaustion of administrative remedies forecloses his right to pursue a claim in federal court." (Dkt. No. 26, at 22). There is no First Amendment claim alleged in the Amended Complaint.

9

plaintiff, "in giving his grievance to the correction officer . . . exhausted all administrative remedies that were available to him." *Id.* at 126.

Here, the first step of the grievance process required Plaintiff to file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a)(1), (b). Any uncertainty regarding the grievability of Plaintiff's claim is resolved by 7 N.Y.C.R.R. § 701.3(e)(3) itself, which provides that: "If an inmate is unsure whether an issue is grievable, he . . . should file a grievance and the question will be decided through the grievance process." *See also Waters v. Melendez*, No. 15-cv-0805, 2018 WL 3079764, at *7–8, 2018 U.S. Dist. LEXIS 84876, at *20–21 (N.D.N.Y. May 18, 2018) (rejecting the argument that the language of § 701.3(e) is "opaque and confusing"), *report and recommendation adopted*, No. 15-cv-805, 2018 WL 3069209, 2018 U.S. Dist. LEXIS 103590 (N.D.N.Y. June 21, 2018), *aff'd*, 783 F. App'x 56 (2d Cir. 2019). Thus, there is no basis for finding that the grievance procedure generally, or § 701.3(e)(3) in particular, is so "opaque and confusing" that no inmate could "make use of it." *Williams*, 829 F.3d at 126. Accordingly, although a plaintiff is "not required to specially plead or demonstrate exhaustion," *Jones*, 549 U.S. at 216, because "it is clear on the face of the complaint" that Plaintiff did not file a grievance concerning his conditions of confinement claim, (*see* Dkt. No. 9, at 5 ("[T]he complaints raised by the Plaintiff were not proper subjects for grievance.")), and that he has not satisfied "the PLRA exhaustion requirement,"[8] *Williams*, 829 F.3d at 122, Defendants' motion to dismiss is granted.[9]

---

[8] Indeed, at oral argument, Plaintiff's counsel conceded that the only factual issue is whether Plaintiff's placement in RMHU was, as he contends, disciplinary in nature, or, as Defendants contend, for therapeutic purposes. The Court, however, assumes the truth of Plaintiff's assertion in the Amended Complaint that the placement was disciplinary in nature. Even so, Plaintiff would still have been required to file a grievance, as discussed above.

[9] At oral argument, Plaintiff's counsel further stated that Plaintiff is not arguing that his mental illness rendered the grievance process unavailable. *Cf.*, *Osborn v. Williams*, No. 18-340-PR, 2019 WL 6499564, at *2, 2019 U.S. App. LEXIS 36119, at *4 (2d Cir. Dec. 3, 2019) ("Whether mental illness can render an administrative remedy unavailable under *Ross* is an open question in this Circuit.")

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 9) is **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. Nos. 4. 10), and Defendants' motion to transfer venue (Dkt. No. 25) are **DENIED as moot**; and it is further

**ORDERED** that the Clerk is directed to close this case.

**IT IS SO ORDERED.**

**Dated: December 23, 2019**

Brenda K. Sannes
U.S. District Judge